## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**HAYWARD INDUSTRIES, INC.,**

       **Plaintiffs,**

**v.**

**SALTWATER POOL SUPPLIES, ET AL.**

       **Defendants.**

Civ. No. 20-6105 (KM)(ESK)

**OPINION**

**<u>KEVIN MCNULTY, U.S.D.J.</u>:**

This matter comes before the Court on the unopposed motion (DE 13)[1] for default judgment of plaintiff Hayward Industries, Inc. Plaintiff, a manufacturer of equipment for commercial and residential swimming pools, initiated this action against defendant Saltwater Pool Supplies ("Salt Pool Store"), d/b/a Salt Pool Store and d/b/a SaltPoolStore.com, and Salt Pro Systems ("Salt Pro") d/b/a Salt Pro Systems LLC, d/b/a Salt Pro System Direct and d/b/a SaltProDirect.com (collectively "Salt Pool Store") for trademark infringement, false advertising, counterfeiting, passing off, false designation of

---

[1]    Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

    "DE" = Docket entry number in this case.

    "Am. Compl." = Plaintiffs' Amended Complaint (DE 5)

    "Pf. Brief" = Plaintiff's Memorandum in Support of Plaintiff's Motion for Default Judgment (DE 13-1)

    "Myers Decl." = Declaration of Anthony Myers, a customer of Salt Pool Sore (DE 13-8)

    "Davila Decl." =Declaration of Jason Davila, Product Manager of Sanitization at Hayward Industries, Inc. (DE 13-6)

    "Belt Decl." = Declaration of Erik Paul Belt, Esq. (DE 13-9).

1

origin, unfair competition, and related claims, all in violation of the Lanham Act (15 U.S.C. § 1051 et seq), as well as New Jersey statutory and common law. The Amended Complaint asserts on information and belief that defendants "are all affiliated or owned and controlled by the same ownership or management entity." (Am. Compl. ¶4). Therefore, I refer to those entities as a single defendant.

Defendant has failed to respond to the initial and Amended Complaint or this motion. For the reasons provided herein, I will grant plaintiff's motion (DE 13) and enter default judgment.

## I.  Summary

### a.  Factual Allegations

Plaintiff is a "manufacturer of equipment for commercial and residential swimming pools, such as pumps, heaters, filters, and chlorination systems." (Am. Compl. ¶9). Plaintiff offers products under numerous brands including, HAYWARD®, its house mark, as well as AQUA RITE®, SWIMPURE®, GOLDLINE®, TURBO CELL®, T-CELL-3®, T-CELL-9®, T-CELL-15®, GLX-CELL™, and GLX-CELL-15-1™. (Am. Compl. ¶10). One of plaintiff's most popular and profitable products is known as a "salt cell," a part of the salt chlorination system which is used to covert saltwater into chlorine for purposes of sanitization. (Am. Compl. ¶¶11-12). Plaintiff manufactures and sells salt cells under its federally registered marks. (Am. Compl. ¶¶11, 14). The Amended Complaint alleges that Plaintiff has continuously used most of it marks "on and in connection with electrolytic chlorine generators and salt cells for at least the past 20 years and, in some cases, even longer." (Am. Compl. ¶27).

Salt cells need to be replaced periodically and, therefore, "a market for replacement salt cells has arisen." (Am. Compl. ¶32). Plaintiff sells its salt cells, including replacement salt cells, through authorized retailers. (Am. Compl. ¶31). Plaintiff alleges that defendant unfairly competes in the salt cell replacement market "by falsely advertising or passing off its replacement salt cells as HAYWARD® replacement cells, by infringing Hayward's trademarks, by

counterfeiting, and by improperly trading on Hayward's brand recognition and good will." (Am. Compl. ¶33).

The Amended Complaint alleges that defendant engages in unlawful conduct in the form of (1) bait-and-switch tactics, (2) passing-off and trademark infringement, (3) false advertisements and false association, and (4) passing-off and counterfeiting. (Am. Compl. ¶¶ 34-69). Because of that unlawful conduct, plaintiff submits, it is directly harmed by actual customer confusion. (Am. Compl. ¶¶70-77).

### i. Bait-and-Switch Tactics

Regarding the bait-and-switch scheme, the Amended Complaint alleges that defendant falsely advertises and passes off its generic salt cells "by luring customers with pop-up ads" that state, for example, "Hayward's T-Cell-15 Just $269.00 40,000 Gallons 5 Year Warranty." (Am. Compl. ¶34). Upon clicking the advertisement, the customer is directed to "Salt Pool Store's own 'Platinum Edition replacement salt cell for HAYWARD T-CELL-15' on Salt Pool's website." (Am. Compl. ¶35). Plaintiff submits that defendant's use of the HAYWARD® and other marks lures current and potential Hayward customers into visiting defendant's website and mistakenly purchasing a competing product, believing it to be a genuine Hayward product. (Am. Compl. ¶36). Additionally, defendant's "ads appear when a potential customer conducts an Internet search seeking a genuine HAYWARD® product." (Am. Compl. ¶38).

### ii. Passing-Off and Trademark Infringement

The Amended Complaint further asserts that defendant's "advertisements prominently display and use the Hayward Marks . . . to pass of Salt Pool Store's own generic salt cells as genuine HAYWARD® branded salt cells or salt cells that are somehow affiliated with, or authorized by Hayward." (Am. Compl. ¶44). For example, the Amended Complaint includes a photo of defendant's website depicting a header labeled "Hayward/ Aqua Rite Replacement Cells." (*Id.*). Under that header is the product named "PLATINUM EDITION REPLACEMENT SALT CELL FOR HAYWARD-CELL-15|40,000 GALLONS| 5-Year WARRANTY." (*Id.*). The description for that product states,

3

*inter alia*, "compatible with Goldline" and "Aqua Rite" and "[r]eplacement for Hayward T-CELL-15 and GLX-CELL-15-W." (*Id.*).

Plaintiff contends that defendant's statement of compatibility is false or misleading and that the repeated use of its marks causes confusion and suggests that Hayward is affiliated with the product. (Am. Compl. ¶¶45-49). Additionally, the advertisement suggests that the generic products are covered under Hayward's warranty. (Am. Compl. ¶50). Because the product is not so covered, "dissatisfied customers will think poorly of Hayward and are likely to complain" on customer ratings sites and social media, which "harms Hayward's good will and reputation among [its] current and prospective customers." (Am. Compl. ¶51).

### iii. False Advertisements and False Association

Next, the Amended Complaint alleges that defendant's "replacement cells do not work perfectly and prompt many consumer complaints" to plaintiff, suggesting that defendant's statements of compatibility constitute false advertisement and false association. (Am. Compl. ¶¶53-55). Additionally, defendant's website "inaccurately states" that its salt is "is equivalent to the T-CELL-3 and T-CELL-9." (Am. Compl. ¶56). Plaintiff submits that defendant uses the Hayward name and marks "to capitalize on Hayward's goodwill" and to "promote its knock-off products as HAYWARD® brand salt cells or as products that Hayward has sponsored or authorized to work with pool systems manufactured and sold by Hayward." (Am. Compl. ¶57).

### iv. Passing-Off and Counterfeiting

Finally, the Amended Complaint alleges that defendant engages in counterfeiting and passing-off its generic products as genuine Hayward products (Am. Compl. ¶¶59-69). Plaintiff ordered a product from defendant's website, which was then shipped to a Hayward employee in New Jersey. (Am. Compl. ¶59). The shipping label for that product stated: "Content Description T-Cell-15 40,000 GALLONS 5 YEAR WARRANTY." (Am. Compl. ¶60). However, the product is not a Hayward T-Cell-15® and is not covered under Hayward's warranty. (Am. Compl. ¶61). Additionally, the product's Instructional Manual

states that it is a "generic replacement cell for Aqua Rite Turbo Cell" which, contends plaintiff, "is not only false but it misleadingly and confusingly suggests to consumers that this product is a genuine Hayward product or product approved by Hayward." (Am. Compl. ¶64). Further, the manual states that "no re-configuration is necessary" when replacing an existing Hayward product with the generic product, but, as alleged in the Amended Complaint, "re-configuration is necessary unless it is an authorized direct replacement." (Am. Compl. ¶66). Moreover, the back of the manual states "Platinum Goldline Manual" which "misleadingly suggest[s] that the product is a genuine Hayward GOLDLINE® product or sponsored, affiliated or authorized by Hayward." (Am. Compl. ¶67).

Plaintiff submits that it is directly harmed by actual consumer confusion, given the allegations of unlawful conduct described above. (Am. Compl. ¶¶70-73). Further, the Amended Complaint alleges that "overwhelming numbers of customers [are] dissatisfied with Salt Pool Store and its 'comparable with Hayward' products" as depicted by negative reviews. (Am. Coml. ¶70).

### b. Procedural History

On April 2, 2020, plaintiff "demanded that Salt Pool Store stop the false ads and infringement" and "asked that Salt Pool Store respond by April 10, 2020." (Am. Compl. ¶73). When defendant failed to respond, plaintiff initiated this action. (*Id.*). The Amended Complaint asserts these claims:

**Count 1**: False advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Am. Compl. ¶¶78-91);

**Count 2**: Federal trademark infringement of the HAYWARD® mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) (Am. Compl. ¶¶92-101);

**Count 3**: Federal trademark infringement of the AQUA RITE® mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) (Am. Compl. ¶¶102-111);

**Count 4**: Federal trademark infringement of the GOLDLINE® mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) (Am. Compl. ¶¶112-119);

**Count 5**: Federal trademark infringement of the SWIMPURE® mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) (Am. Compl. ¶¶120-127);

**Count 6**: Federal trademark infringement of the TURBO CELL® mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 11141(1) (Am. Compl. ¶¶128-135);

**Count 7**: Federal trademark infringement of the T-CELL-3® mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) (Am. Compl. ¶¶136-143);

**Count 8**: Federal trademark infringement of the T-CELL-9® mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) (Am. Compl. ¶¶144-151);

**Count 9**: Federal trademark infringement of the T-CELL-15® mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) (Am. Compl. ¶¶152-159);

**Count 10**: Federal trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Am. Compl. ¶¶160-166);

**Count 11**: Unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by unauthorized use of the HAYWARD®, GOLDLINE®, AQUA RITE®, SWIMPURE®, TURBO CELL®, T-CELL-3®, T-CELL-9®, T-CELL-15® trademarks (Am. Compl. ¶¶167-173);

**Count 12**: Unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by unauthorized use of the T-CELL™, GLX-CELL™, GLX-CELL-15-W™, GLX-CELL-9™, GLX-CELL-5™, GLX-CELL-3™ trademarks (Am. Compl. ¶¶174-181);

**Count 13**: Unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by passing off (Am. Compl. ¶¶ 182-190);

**Count 14**: False advertising in violation of N.J.S.A. § 56:8-2 *et seq.* (Am. Compl. ¶¶191-198);

**Count 15**: Unfair competition in violation of N.J.S.A. § 56:4-1 (Am. Compl. ¶¶199-208) (Am. Compl. ¶¶199-208);

**Count 16**: Trademark infringement and unfair competition under New Jersey common law (Am. Compl. ¶¶209-217);

**Count 17**: Tortious interference with prospective economic advantage (Am. Compl. ¶¶218-224);

**Count 18**: Unjust enrichment (Am. Compl. ¶¶225-229).

Defendant has failed to answer or otherwise respond to the Amended Complaint. On September 28, 2020, the Clerk entered default. Plaintiff now moves for default judgment.

## II.    Legal Standard

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July

17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

### III. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Plaintiff filed its initial complaint against Salt Pool Store on May 19, 2020. (DE 1). After having trouble effectuating service, and in the course of investigating an alternative address, plaintiff discovered a second entity, Salt Pro, that appears to be closely related to Salt Pool Store and, plaintiff alleges, is jointly involved in the misconduct giving rise to this litigation. (Pf. Brief at 3). Plaintiff amended its complaint to add Salt Pro on July 21, 2020. (DE 5). Plaintiff served Salt Pro on July 28, 2020 and Salt Pool Store on August 12, 2020.[2] (DE 10; DE 11; DE 12-1). Salt Pro's deadline to respond was August 18,

---

[2]     On August 12, 2020, this Court granted plaintiff's motion for alternative service via email with respect to defendant Salt Pool Store. (DE 9 at 3). Prior to filing its motion, plaintiff attempted to contact Salt Pool Store by first mailing two cease-and-desist letters to its last known address and at least one cease-and-desist letter and a copy of the complaint by email to sales@saltpoolstore.com. (DE 9 at 1). That email was returned as undeliverable, but the overnight mail sent to Salt Pool Store "was returned either because it was 'refused' or because [Salt Pool Store] no longer was located at that address." (DE 9 at 1-2). Plaintiff also attempted to serve Salt Pool Store at the two locations listed on its website via a process server. (DE 9 at 2). Both attempts were unsuccessful. (*Id.*). Finding plaintiff's unsuccessful efforts to serve Salt Pool Store sufficient, the Court authorized alternative service by email as being "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of

2020 and Salt Pool Store deadline was September 2, 2020. Neither entity responded, and plaintiff's request for entry of default was granted on September 23, 2020. Therefore, the prerequisites for default judgment have been satisfied.

## IV. Three-Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

### a. Factor one: Existence of meritorious defense

As always, evaluation of the first factor is made difficult by defendant's failure to answer or to oppose the motion for default judgment. Nevertheless, my independent review of the record does not suggest that plaintiff's claims are legally flawed. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that the plaintiff has successfully stated a claim for relief against defendant.

As explained more fully below, I find that plaintiff has (1) established a prima facie case of specific jurisdiction over defendant and (2) sufficiently demonstrated entitlement to relief based on the causes of action asserted in the Amended Complaint.

---

the action." (DE 9 at 2-3 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Through additional research, plaintiff uncovered an additional entity associated with Salt Pool Store, Salt Pro. (*Id.*). Plaintiff attempted to serve Salt Pro at its listed address in Norcross, Georgia, but was initially unsuccessful. (*Id.*). Plaintiff eventually did succeed in serving Salt Pro on July 28, 2020. (*Id.*)

### i.   Personal Jurisdiction

As an initial matter, I address this Court's personal jurisdiction over defendant. *See Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015) ("[W]hen a default judgment is requested, a court is required to make a threshold determination regarding any jurisdictional defects.") (citing *Bolden v. Se. Pa. Transp. Auth.*, 953 F.2d 807, 812 (3d Cir. 1991)). If a court lacks personal jurisdiction over a defendant, the court does not have authority to render a default judgment, and any such judgment will be deemed void. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008). "In the absence of an evidentiary hearing, a plaintiff[']s complaint need only establish a prima facie case of personal jurisdiction." *Allaham*, 635 F. App'x at 36-37 (citing *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010); *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)). "In determining whether a plaintiff has made a prima facie showing, a district court is 'required to accept the allegations in the complaint as true and to construe any disputed facts in [the plaintiff's] favor.'" *CoachSource, LLC v. Coachforce*, No. 17-5126, 2019 WL 1385200, at *1 (D.N.J. Mar. 27, 2019) (quoting *Fatouros v. Lambrakis*, 627 F. App'x 84, 87 (3d Cir. 2015)).

A federal court may exercise personal jurisdiction over a defendant to the extent authorized by state law. Fed. R. Civ. P. 4(k)(1)(A). New Jersey law provides for jurisdiction coextensive with constitutional due process. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4). Due process allows for general or specific jurisdiction. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). A court has general jurisdiction when a defendant has "continuous and systematic" contacts with the forum state, *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). A court has specific jurisdiction when a plaintiff's claim arises from a defendant's actions within the forum state, such that the defendant could "reasonably anticipate being haled into [the state's] court[s]." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151

(3d Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (internal quotation marks omitted).

Salt Pool Store has its principal places of business in Illinois and Georgia (Am. Compl. ¶2) and Salt Pro is a Delaware limited liability company having its principal place of business in Delaware (Am. Compl. ¶3). Plaintiff does not submit that this Court has general jurisdiction over defendant. Instead, the Amended Complaint alleges that this Court has personal jurisdiction based on defendant's contacts with the forum, *i.e.*, that the Court has specific personal jurisdiction. (Am. Compl. ¶7)

For specific jurisdiction, the Supreme Court has delineated three due process requirements: First, the plaintiff must demonstrate that the defendant "purposefully directed [its] activities at the forum." *O'Connor*, 496 F.3d at 317 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)) (internal quotation marks omitted). Second, "the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, if the plaintiff satisfies the first two requirements, "a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476) (internal quotation marks omitted).

A defendant can be subject to personal jurisdiction in a state it never entered:

> Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King*, 471 U.S. at 476.

I find plaintiff has pled a prima facie case of specific jurisdiction, and, given the procedural context, I will not require more. First, plaintiff alleges that defendant is "regularly engaged in business in this District and has purposefully targeted its unlawful business activities to the residents of this District, for example, falsely advertising, offering for sale, and selling infringing, counterfeit products in New Jersey." (Am. Compl. ¶7). The Amended Complaint further asserts that Defendant "sells the infringing products through its own interactive, retail website, www.saltpoolstore.com and www.saltprodirect.com" and "does not place any geographic restrictions on who can view the advertisement or buy its products from its website." (*Id.*). Therefore, "the infringing advertisements and products are made available to New Jersey residents," and, plaintiff alleges, defendant "has shipped infringing products to the residents of New Jersey" (*Id.*), including the plaintiff (Am. Compl. ¶59). *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884-86 (2011) (noting the difference, for personal jurisdiction purposes, between directly selling products to a forum and products that end up in a forum because of the stream of commerce); *Celgene Corp. v. Distinct Pharma*, No. 17-5303, 2019 WL 1220320, at *3 (D.N.J. Mar. 13, 2019) (finding plaintiff pled a prima facie case of specific jurisdiction because, *inter alia*, plaintiff alleged that defendant purposefully directed its activities to New Jersey and sold pharmaceutical products directly to customers in New Jersey). Accepting those allegations as true, I find defendant has engaged in sufficient minimum contacts with the forum.[3]

---

[3] Plaintiff alleges, albeit with limited factual support, that defendant ships its infringing products to New Jersey residents. Instead of disputing that allegation, or challenging jurisdiction, defendants have persistently avoided service and have not responded. The Court is aware of the case law holding that, in the context of a commercial website accessible nationwide, more is needed to demonstrate purposeful availment than shipment to the forum orchestrated by the plaintiff. *See Toys "R" Us, Inc. v. Step Two, S. A.*, 318 F.3d 446, 455-56 (3d Cir. 2003). Here, however, plaintiff alleges that defendants have regularly engaged in business in the forum and have shipped infringing products to other residents in the forum, as well as itself. (Am. Compl. ¶7). I find plaintiff has sufficiently pleaded a prima facie case of specific

Second, the litigation arises out of defendant's activity in the forum. The advertisement for and shipment of the alleged New Jersey sales are the very activities that plaintiff submits violate trademark and unfair competition law.

Finally, the exercise of jurisdiction comports with "fair play and substantial justice." Factors to consider in this inquiry include "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp.*, 444 U.S. at 292; *see also Burger King*, 471 U.S. at 477. These factors do not weigh against a finding of personal jurisdiction here.

### ii. Plaintiff's Causes of Action

I now address the claims asserted in the Amended Complaint.

1. Trademark Infringement, Unfair Competition, and False Designation of Origin Claims (**Counts 2-9, 11-13,** and **15-16**)

Under the Lanham Act Section 32, 15 U.S.C. Section 1114(1):

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive

. . .

Shall be liable in a civil action by the registrant . . . .

15 U.S.C.A. § 1114(l)(a). Additionally, the Lanham Act Section 43(a) proscribes unfair competition or, as the statute refers to it, "false designation of origin" or "false description." 15 U.S.C.A. § 1125(a). The statute provides that:

---

jurisdiction based on the limited information available to it due to defendant's failure to answer or otherwise respond to the Amended Complaint.

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
>> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a)(1)(A).

To state a claim for trademark infringement, 15 U.S.C. § 1114(1), and unfair competition/false designation of origin, 15 U.S.C. § 1125(a)(1), a plaintiff must show three elements: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards"); *See also Chanel, Inc. v. Matos*, No. 14-3509, 2015 WL 4773072, at *10 n.6 (D.N.J. Aug. 13, 2015) ("Courts in the Third Circuit consider claims for trademark infringement and for false designation of origin under an identical standard.") (citing *A&H Sportswear*). A plaintiff bears the burden of proving these elements.

As to the first and second elements, plaintiff has alleged ownership of trademarks and provided the registration numbers and the date of registration for each. (Am. Compl. ¶¶16-25). Plaintiffs allege that the trademarks are incontestable under 15 U.S.C. § 1065 "by virtue of years of continuous and uncontested use." (*Id.*). Additionally, plaintiff has also provided the certificates of registration. A "certificate of registration issued by the United States Patent and Trademark Office constitutes prima facie evidence of the validity and ownership of a disputed mark." *Coach, Inc. v. Cosmetic House*, No. 10-2794,

2011 WL 1211390, *2 (D.N.J. Mar. 29, 2011) (certificate of registration by U.S. Patent and Trademark Office is sufficient to establish the first and second elements of trademark infringement and unfair competition claims). As such, I am satisfied that the first two elements are met.

Regarding the third element, a "likelihood of confusion" exists where "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Coach*, 2011 WL 1211390, at *3 (quoting *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991)). Courts consider a variety of factors when assessing whether two marks are likely to cause consumer confusion. In this Circuit those factors, known as the *Lapp* factors, include the following:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other factors suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

*Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 471 (3d Cir. 2005) (quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983)).

The Third Circuit has "repeatedly insisted that the Lapp factors are not to be mechanically tallied, but rather that they are tools to guide a qualitative decision." *A & H Sportswear, Inc.*, 237 F.3d at 216. "The single most important factor in determining likelihood of confusion is mark similarity." *Id.* Marks are confusingly similar if "ordinary consumers would likely conclude that [the two

products] share a common source, affiliation, connection, or sponsorship." Id. (quoting *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 477 (3d Cir. 1994)). Nevertheless, "when the mark owner and the alleged infringer sell similar goods or services, the court need rarely look beyond the marks themselves." *Luxottica Grp., S.p.A. v. Shore Enuff*, No. 16-5847, 2019 WL 4027547, at *5 (D.N.J. Aug. 27, 2019). In other words, "when the goods sold are similar to mark owner's goods, as is the case here, analysis narrows to observing the extent of similarity between the registered and allegedly infringing marks." *Id.*

Here, plaintiff alleges that defendant competes with it directly by selling purported replacement salt cells that are counterfeits of and/or confusingly similar to Hayward's trademarks. (Am. Compl. ¶33). Indeed, defendant's website uses Hayward's marks (e.g., T-CELL-15) to advertise their products. (See, *e.g.*, Am. Compl. ¶37 ("Hayward T-Cell-15 Just $269.00 Direct Replacement, In Stock")). Defendant also uses the Goldline mark on its user manual. (Am. Compl. ¶67). Based on those allegations, which I must accept as true, *Comdyne I,* 908 F.2d at 1149, I find plaintiff has sufficiently established likelihood of confusion.

In addition, I find the same with respect to plaintiff's claims for unfair competition under New Jersey's statute, N.J.S.A. 56:4-1, and trademark infringement and unfair competition under common law (**Counts 15** and **16** respectively). *See N. V.E., Inc. v. Day*, No. 7-4283, 2009 WL 2526744, at *2 (D.N.J. Aug. 18, 2009) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d Cir. 1994)) ("By virtue of . . . Lanham Act violations," the defendant "also established its common law and state law claims for unfair competition."); *Coach, Inc. v. Bags & Accessories*, No. 10-2555, 2011 WL 1882403, at *5 (D.N.J. May 17, 2011) ("[L]iability for common law trademark infringement is established when a defendant violates the federal Lanham Act for trademark infringement.").

Based on the foregoing, I find that plaintiff has stated a viable cause of action for trademark infringement, unfair competition, and false designation of origin and will enter default judgment as to these claims (**Counts 2-9**, **11-13, and 15-16**).

### 2. Counterfeiting (**Count 10**)

To establish trademark counterfeiting, plaintiff "must show (1) the defendant infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (2) the defendant intentionally used the trademark knowing it was counterfeit or was willfully blind to such use." *Coach, Inc. v. Ocean Point Gifts*, No. 09-4215, 2010 WL 2521444, at *3 (D.N.J. June 14, 2010) (citing *Chanel*, 558 F. Supp. 2d at 537). Intent may be inferred from a defendant's continued use after given notice of infringement. *Id.* (citing *Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 08–02662, 2009 WL 2147843, at *6 (D.N.J. July 15, 2009)).

Plaintiff has established both elements. As discussed *supra*, plaintiff has established a viable claim for trademark infringement. Defendant's willful intent may be inferred from its continued infringement after receiving two cease and desist letters and after receiving service of the initial and Amended Complaint, all of which it ignored. *See Ocean Point Gifts*, 2010 WL 2521444 at *3 (finding the intent element established where the defendant continued to sell infringing handbags nearly three months after service of the complaint). Therefore, I will enter default judgment for the counterfeiting claim in **Count 10**.

### 3. False Advertising (**Counts 1** and **14**)

To establish a claim for false advertising under the Lanham Act, plaintiff must prove five elements:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a

likelihood of injury to the plaintiff in terms of declining sales, loss
of good will, etc.

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir.
2014) (alteration in original) (quoting *Pernod Ricard USA, LLC v. Bacardi U.S.A.,
Inc.*, 653 F.3d 241, 248 (3d Cir.2011)).

Here, plaintiff alleges that defendant's advertisements and website
contain false or misleading statements. (Am. Compl. ¶¶34-69). For example,
defendant markets its salt cells as replacements for Hayward products.
However, plaintiff alleges that defendant's salt cells are not compatible with
Hayward products, and, contrary to the statements in defendant's product
manual, re-configuration is necessary to install non-Hayward salt cells. (Am.
Compl. ¶¶65-66). Therefore, factor one is satisfied.

Plaintiff has also demonstrated factors two through four through the
declaration (DE 13-8) of Anthony Myers, a dissatisfied Salt Pool Store customer
who mistakenly believed he had purchased a Hayward-approved salt cell.
Myers, who resides in Florida, purchased a "Platinum Edition Replacement Salt
cell for Hayward T-CELL-9 | 25,000 Gallons | 5-Year Warranty" from
defendant's website www.saltpoolstore.com. (Myers Decl. ¶3). Myers states that
he purchased the salt cell because the website advertised it as "'compatible
with Hayward' salt systems," stated that the product "included a 5 year
warranty," and boasted that "installation did not require any tools, plumbing,
or re-threading." (*Id.*). However, Myers was unable to effectively install the Salt
Pool Store product. (*Id.* ¶4). Myers "had to tighten the cell with tools in order
for the salt cell to connect to the Hayward salt system but it leaked the entire
time," and after six months the salt cell stopped working. *Id.* Myers attempted
to contact Salt Pool Store, which eventually suggested he send his broken
product back to them and provided an address in Illinois. (*Id.*). Because Myers
believed that Hayward was responsible for the product, he contacted plaintiff.
(*Id.* ¶7). Myers' declaration demonstrates that defendant's product tends to
deceive customers, that the deception is material, and that defendant's goods

travelled in interstate commerce. Therefore, factors two through four are satisfied.

Finally, regarding likely injury, the Amended Complaint provides numerous instances of actual consumer dissatisfaction and confusion through online reviews. (Am. Compl. ¶¶70-77). I find those reviews establish a reputational harm to plaintiff and tarnish its good will.

For those reasons, I will enter default for plaintiff's false advertising claim under the Lanham Act (**Count 1**).

I also find that plaintiff has pled a viable claim for false advertising under the New Jersey Consumer Fraud Act ("NJCFA"). That act makes it unlawful to use fraud in connection with the sale or advertisement of merchandise. N.J.S.A. 56:8-2. To establish a prima facie claim of false advertising under the NJFCA, a plaintiff must demonstrate "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 97 (D.N.J. 2011) (quoting *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007)).

Here, plaintiff has sufficiently alleged that defendant engaged in unlawful conduct by infringing on its registered trademarks. Regarding ascertainable loss, plaintiff has demonstrated, through negative reviews and the Myers Declaration, that customers have purchased defendant's salt cells under the mistaken belief that they are compatible with the Hayward system or constitute a suitable replacement for Hayward salt cells. *See id.* ("Misrepresenting a product in order to get a consumer to purchase it does cause an injury, and what New Jersey Courts require for that loss to be 'ascertainable' is for the consumer to quantify the difference in value between the promised product and the actual product received."). Finally, I find the causal link is satisfied because, but for defendant's misleading advertisements and infringement on plaintiff's trademarks, the customers would have purchased suitable replacement parts from plaintiff or its approved retailers. Therefore, I will enter

default judgment with respect to plaintiff's state false advertising claim under **Count 14**.

    4.  <u>Claims for Unjust Enrichment and Tortious Interference with Prospective Economic Advantage</u> (**Counts 17-18**)

To state a claim for unjust enrichment under New Jersey law, a plaintiff must show: that "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 330 (D.N.J. 2014) (internal quotation marks omitted) (quoting *Synder v. Farnam Co., Inc.*, 792 F. Supp. 2d 712, 723-34 (D.N.J. 2011)). At the pleading stage, a plaintiff "need only allege facts sufficient to show: 1) Plaintiff conferred a benefit on Defendant; and 2) circumstances are such that to deny recovery would be unjust." *Palmeri v. LG Electronics USA, Inc.*, No. 07-5706, 2008 WL 2945985, *5 (D.N.J. July 30, 2008) (citing *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 437, 608 A.2d 280 (1992)).

Here, the Amended Complaint alleges that plaintiff "has spent significant time and resources developing, advertising, and protecting its brands, and those efforts, along with the high quality of the products, have resulted in consumer goodwill." (Am. Compl. ¶10). In particular, plaintiff's efforts included "considerable research, time, strategic planning, and evaluation of market and economic trends, new technologies, innovations and their impact on the pool equipment industry." (Am. Compl. ¶¶ 226). Plaintiff alleges that it conferred the benefit of that research on defendant when it used Hayward's marks without permission. (Am. Compl. ¶¶227-229). Specifically, if defendant did not appropriate Hayward's marks and take advantage of Hayward's goodwill, defendant "would have had to expend considerable time and expense in independent research, development, marketing and advertising of its Platinum Edition salt cells in order to enter the relevant marker and directly compete with Hayward." (Am. Compl. ¶¶228). Accepting that allegation as true, I find that defendant unjustly received the benefit of plaintiff's time and resources.

Therefore, I will enter default judgment for plaintiff's unjust enrichment claims under **Count 18**.

Finally, I find that defendant has also tortiously interfered with plaintiff's prospective economic advantage by misappropriating Hayward's marks to re-direct customers to their own salt cells.

Under New Jersey law, a claim for tortious interference with prospective economic gain has four elements: "(1) a reasonable expectation of economic advantage to plaintiff, (2) interference done intentionally and with 'malice,' (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages." *Tonkinson v. Byrd*, No. 17-6162, 2018 WL 1919829, at *6 (D.N.J. Apr. 24, 2018) (quoting *Varrallo v. Hammond Inc.*, 94 F.3d 842, 848 (3d Cir. 1996)).

Here, plaintiff alleges that defendant use false and deceptive advertising, including "bait-and-switch" tactics, to redirect internet searches for Hayward products to defendant's products and websites. (Am. Compl. ¶¶34-43). For example, defendant generates a pop-up ad for "Hayward's T-Cell-15" that will lead a consumer to defendant's own website. (Am. Compl. ¶34). Plaintiff had a reasonable expectation of economic advantage with respect to the consumers who searched for Hayward products and were led, misleadingly, to defendant's websites. Defendant's interference was clearly done intentionally as it used Hayward's marks and generated the pop-up ad in connection with searches for Hayward products. (*See* Am. Compl. ¶¶34-36). There is a causal connection between the interference and plaintiff's loss of prospective gain as defendants have effectively substituted its own products after a consumer expressed interest in the advertised Hayward product. (Am. Compl. ¶37). Plaintiff suffered actual damages by loss of would-be sales. *See Nat'l Sportswear, Inc. v. Red Diamond Co.-Athletic Lettering*, No. 14-1117, 2014 WL 3887853, at *5 (D.N.J. Aug. 6, 2014) ("Plaintiff has satisfied all four elements of the cause of action. Plaintiff had prospective economic opportunities with potential customers on the internet, Defendant intentionally and without justification interfered with

those opportunities by manipulating internet searches and purporting to be Plaintiff to secure business. This caused Plaintiff to lose economic benefits and resulted in damages."). Therefore, I will enter default judgment as to plaintiff's claim under **Count 17**.

In light of the foregoing, I find that plaintiff has sufficiently demonstrated (1) this Court's jurisdiction over defendant and (2) entitlement to relief based on the causes of action asserted in the Amended Complaint. Therefore, the first factor in assessing whether to enter default judgment – whether there appears to be a meritorious defense – weighs in favor of default.

### b. Factors two and three: Prejudice to Plaintiff and Defendants' culpability

The second and third factors also weigh in favor of a default judgment. Salt Pool Store and Salt Pro were properly served but failed to appear, defend, or otherwise respond to the Amended Complaint. It is clear that the plaintiff has been prejudiced by this dereliction because it has been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding that a defendant's failure to answer prejudiced the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiff[s] will suffer prejudice if the Court does not enter default judgment as Plaintiff[s] [have] no other means of seeking damages for the harm caused by Defendant."). Absent any evidence to the contrary, defendant's "failure to answer evinces [its] culpability in [the] default." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023 at *4. In this case, "there is nothing before the Court to show that the Defendant['s] failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009)) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than

its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, the three factors support the entry of default judgment. Therefore, I will grant the motion (DE 13) for default judgment.

## V.     Remedies

Plaintiff seeks damages, injunctive relief, and attorneys' fees and costs. I will address each in turn.

### a. Damages

For plaintiff's Lanham Act claims, statutory damages are available under 15 U.S.C. § 1117. They are, in this Court's view, particularly appropriate where, as here, the defendant's failure to respond has made it difficult or impossible for the plaintiff to demonstrate its actual damages. Indeed, that failure to respond has impeded plaintiff's ability to calculate damages for its trademark infringement, false advertising, false designation of origin, and unfair competition claims as well. (Pf. Brief at 27). That said, plaintiff submits that its counterfeiting claim "provides a good substitute for actual damages – namely, an election of statutory damages under 15 U.S.C. § 1117(c)." (*Id.*).

Statutory damages are available in an amount of $1000 to $200,000 per counterfeit mark, or type of good or service sold. In the case of willful infringement, the court may impose damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c). "Such willful conduct must have included an 'aura of indifference to plaintiff's rights' or a 'deliberate and unnecessary duplicating of a plaintiff's mark . . . calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured.'" *Shore Enuff*, 2019 WL 4027547 at *6 (quoting *Platypus Wear*, 2009 WL 2147843 at *6).

The statute provides little guidance as to the selection of a statutory damages figure, and much is left to the discretion of the courts. *Luxottica Grp. S.p.A. v. Accessory Consultants LLC*, No. 19-11732, 2020 WL 1910378, at *5 (D.N.J. Apr. 20, 2020) (citing *Luxottica Group S.p.A. v. Individual, Partnership,*

etc., 2017 WL 9324773 at *5 (S.D. Fla. 2017)). Relevant factors have included compensation of actual loss, to the extent it can be estimated; the circumstances of the infringement; and deterrence. *Id.* Such factors serve as a reality check against simply imposing the maximum statutory damages in lieu of proof.

Count 10 is representative. There, Plaintiff alleges counterfeiting of eight federally registered trademarks. (Am. Compl. ¶161). By defaulting, defendant has, in effect, waived any defense. Thus, plaintiff is entitled to ordinary statutory damages of $1000 to $200,000 for each of the eight counterfeited marks, yielding a range of $8000 to $1,600,000. Plaintiff submits, however, that this is a case of willful infringement, entitling it to as much as $2 million per mark, yielding a total of $16 million for the eight marks. Defendant, argues Hayward, has full knowledge of Hayward's ownership in the trademarks and the goodwill associated with the marks, which is why it capitalizes on Hayward's reputation.  Further, defendant continues to sell counterfeit and infringing salt cells while ignoring plaintiff's cease-and-desist letters and filings. While those letters and filings were insufficient to stop defendant, plaintiff contends the entry of a statutory damage award in the amount requested should be sufficient to deter defendant from continuing to counterfeit or otherwise infringe Hayward's marks. Defendants advertise and sell their counterfeit salt cells anywhere from $189-$600, which is within the same general range of prices that Hayward charges for its salt cells. (Davila Decl. ¶12). Given the number of federal registrations infringed, the estimated profits, and the reasonable inference that plaintiff's limited investigation – hindered by defendant's refusal to respond – did not capture the full scale of defendant's operation, I will award a significant amount in statutory damages available under the Lanham Act to ensure that defendant does not continue its intentional and willful infringement.

As I say, the statute would authorize a theoretical maximum of $2 million for each of the eight marks, for a total of $16 million. Still, the number of marks involved may be a fairly arbitrary proxy for the harm done, in that

they seem to cluster around a limited number of similar products.[4] There are no indications either way as to whether defendants' operation is substantial, although it has apparently been difficult to locate. Plaintiff, through no fault of its own, has not estimated lost sales. But neither has plaintiff even revealed how profitable its own products are, to lend some perspective. The only financial information before the court is that infringing salt cells are priced anywhere from $189 to $600. Thus, they are moderately priced items—far from inexpensive, but not luxury or designer goods, either.

In *Ocean Point Gifts,* the late Chief Judge Simandle of this district contributed a useful survey of Lanham Act damages in the context of high-priced items sold on the internet, a marketplace that lends itself to high-volume infringement:

> The typical Internet case involves a suit against someone selling counterfeit luxury items on the Internet. These cases often have high damage awards due in part to the wide market exposure that the Internet can provide. *See Louis Vuitton v. Mosseri*, 2009 WL 3633882, at *3 (awarding $25,141.31 per infringement for $4,072,892.22 total); *Chanel, Inc. v. Guetae,* 2009 WL 1653137, at *5 (D.N.J. June 8, 2009) (awarding $490,818.45 total); *Chanel, Inc. v. Mosseri, No.* 07–2619, Order at 2 (D.N.J. May 20, 2008) (awarding $180,000 per infringement for $3,780,000 total); *Chanel v. Gordashevsky,* 558 F.Supp.2d at 538 (awarding $2,238,624.50 total); *Chanel, Inc. v. Craddock,* No. 05–1593, 2006 WL 1128733, at *1 (D.N.J. April 27, 2006) (awarding $100,000 per infringement for $8,100,000 total); *see also Louis Vuitton & Oakley*, 211 F.Supp.2d 567, 584–85 (awarding $1,500,000 total and stating "the point of sale is very relevant to the statutory damages discussion").

*Coach, Inc. v. Ocean Point Gifts*, No. CIV.A.09-4215 JBS, 2010 WL 2521444, at *6 (D.N.J. June 14, 2010).

---

[4]    Compare, for example, *Audi AG v. Posh Clothing, LLC*, discussed in text below, in which the three marks belonged to separate automobile manufacturers, Audi, Bentley, and Lamborghini (although those companies are under the common ownership of Volkswagen AG).

In *Audi AG v. Posh Clothing, LLC*, Judge Vazquez of this district awarded $3,000,000 in statutory damages related to the defendant's willful use of counterfeit marks. No. CV 18-14254, 2019 WL 1951166, at *6 (D.N.J. May 2, 2019). There, the marks were world-famous and associated with luxury automobiles, but the goods to which they were applied (clothing and personal accessories) were more prosaic. Judge Vazquez's reasoning is instructive:

> [T]he Court finds $3,000,000 in statutory damages [$1,000,000 for each general company mark infringed upon] to be appropriate. As noted, the Court is unable to determine Defendants' profits and saved expenses, or Plaintiffs' lost revenues, because Defendants failed to respond. However, Defendants' state of mind supports a significant award of damages given that this conduct appears to be brazen and willful. The Court finds that Plaintiffs' request is appropriate in light of the statutory maximum and circumstances alleged. Courts in this district have awarded comparable sums in similar circumstances. *See Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 538 (D.N.J. 2008) (awarding $2,238,624.50 in statutory damages for counterfeit handbags, wallets, sunglasses, jewelry, and scarves); *see also Louis Vuitton Malletier, S.A. v. Joseph Mosseri*, No. 07-2620 (Oct. 28, 2009 Order) (awarding $3,780,000 in statutory damages for counterfeit handbags, wallets, and key chains).

*Id.*; *See also Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 688 (D.N.J. 2015) ($30,000 per infringement for a total of $180,000, thirty times the minimum statutory damages, which the Court found appropriate given the Defendant's "culpability (and even willfulness), and constitutes a sum significant enough to compensate Plaintiff for any arguable losses and to deter Defendant and others");*Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 170 (S.D.N.Y. 1999) (awarding $750,000 and noting that awards increase to deter and punish a willful continuous course of infringements and defiance to the judicial process); *Tommy Hilfiger Licensing, Inc., v. Goody's Family Clothing, Inc.*, No. 100-1934, 2003 WL 22331254, at *44 (N.D. Ga. May 9, 2003) (awarding $2,100,000).

In luxury-goods or luxury-trademark cases, typical of those this Court sees, it is often the trademark itself that is the source of the item's value. By its mere presence, the trademark multiplies the perceived dollar value of the item. The item itself—say, a knockoff Gucci bag—whatever its practical uses, is a status or lifestyle signifier, valuable to the consumer as such. The salt cells at issue here, however, are utilitarian items, presumably not observed even by swimmers, and valued solely for the function they perform in chlorinating pool water. The wrong being done here is the misuse of the plaintiff's trademarks to steer the internet customer to a purchase of a competing (and allegedly lower quality) product. The likelihood of confusion is perhaps mitigated to some degree by the defendants' grudging and equivocal statements that the products are a "replacement for" those of plaintiff, or, more defensibly, "compatible with" those of the plaintiff. In short, the infringement is real, but far from the most brazen trickery or effrontery this Court has seen.

I observe in passing that the defendants' business, though infringing, is not wholly without redeeming qualities. The business of placing counterfeit luxury trademarks on cheap handbags is often pure piracy, and nothing more.[5] By contrast, the sale of generic substitutes for the consumables used in a brand-name product has some legitimacy. It may be compared to the sale of generic drugs, or razor blades that fit a name-brand razor.[6] I do not minimize the wrongfulness of passing off such consumables as if they originated with the brand-name manufacturer, as was allegedly done here; I merely note that, if kept within the bounds of trademark law, the sale of compatible supplies may have some economic value. And the plaintiff's legitimate interest in suppressing misuse of its trademark must of course be distinguished from its interest in stamping out *all* generic competition, whether infringing or not.

---

[5]    Query, however, whether the consumers are being fooled, or whether the consumers are fooling their friends.

[6]    To some degree, we have all seen the "steering" effect in our local pharmacy chain, where such products are shelved next to their brand-name equivalents.

I start from the permissible range of statutory damages for eightfold infringement, ranging from $8000 to $16 million, although the number of marks seems a somewhat arbitrary measure in a case of this kind. I consider as well the potential for widespread infringement afforded by internet commerce and the willfulness of the infringement. Defendants' noncooperation makes an estimate of actual damages impractical, although plaintiffs point to no outward signs of a substantial operation. I also consider that the infringement is not so severe in nature as many, and that the defendant's business, by contrast with the luxury-goods cases, has economic substance and value beyond the mere pirating of trademarks. And I assess all of these factors in the context of awards in other cases, most of which involve luxury goods or trademarks, and most of which seem to fall in a heartland of $500,000 to $3 million, albeit with many outliers.

Balancing all of these factors, I will, within my discretion, enter a money judgment of $2,000,000 in statutory damages.

### b. Injunctive relief

Plaintiff seeks a permanent injunction to prevent additional and ongoing harm caused by defendant's counterfeiting, infringement, and other misconduct.

The Lanham Act, 15 U.S.C. § 1116, authorizes injunctive relief to restrain acts of infringement. The court's discretion is guided by the four traditional equitable factors: (1) irreparable injury; (2) inadequacy of legal remedies; (3) the balance of hardships as between the plaintiff and defendant; and (4) the public interest. See *Shore Enuff*, at *9 (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). I find those factors weigh in favor of issuing the injunction.

Infringement based on a likelihood of confusion is tantamount to a finding of irreparable injury. *See id.* (citing *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)). I have already made such a finding.

Current damages, let alone future damages, are difficult or impossible to calculate with precision as a result of the defendant's default. In addition, an ongoing loss to the plaintiff's business goodwill cannot be readily estimated or compensated in damages. *Id.* (citing *Louis Vuitton v. Mosseri*, 2009 WL 3633882, at *5 (D.N.J. Oct. 2, 2009)).

The balance of hardships favors the plaintiff. Defendant is not being deprived of anything to which it is entitled. Moreover, the plaintiff has done what can reasonably be expected to enforce its rights; defendant's non-appearance implies that efforts to identify and restrain future infringement might not be fruitful. *See id.*

Finally, "[t]he Third Circuit has recognized that the public interest weighs in favor of trademark enforcement because 'there is a public interest in the protection of the trademark and to avoid confusion in the public.' *Coach, Inc. v. Fashion Paradise, LLC*, No. 10-4888, 2012 WL 194092, at *9 (D.N.J. Jan. 20, 2012) (citing *Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152, 156 (3d Cir. 1984)). Similarly, issuing an injunction will serve the public interest goals of preventing consumer confusion and plaintiff's property interest. *See id.*

### c. Attorneys' fees and costs

Finally, plaintiff requests attorneys' fees and costs.

"Reasonable attorney's fees may be awarded in exceptional cases; exceptional cases include those where the Court has made a finding of willfulness." *Chanel*, 558 F.Supp.2d at 539; *see* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party"). The Third Circuit has indeed held that "a district court must make a finding of culpable conduct on the part of the losing party, such as bad faith, fraud, malice, or knowing infringement, before a case qualifies as 'exceptional.'" *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 47 (3d Cir.1991) (citing 15 U.S.C. § 1117(a)).

As discussed above, Defendant's conduct constitutes willful infringement. Accordingly, I will award reasonable attorneys' fees.

Plaintiff has submitted proof that it has incurred attorneys' fees of $73,591.70 and $3,105.56 in costs associated with this case. (*See* Belt Decl.) However, I will grant plaintiff's request to update that total, upon entry of default judgment, to include the fees and costs billed on this matter to date.

## VI.    Conclusion

For the reasons set forth above, I will grant plaintiff's motion (DE 13) for default judgment. An appropriate order, granting the motion and imposing a permanent injunction, accompanies this opinion. Plaintiff shall, within 15 days, submit a form of money judgment reflecting the Court's award and updating the figures for fees and costs.

Dated: May 14, 2021

/s/ Kevin McNulty

_____
**Kevin McNulty**
**United States District Judge**